COON et al. v. JACKSON.
DAVIS et al. v. SAME.

No. 20149. Opinion Filed July 14, 1931.

Rehearing Denied Jan. 12, 1932.

Melton & Melton, for plaintiffs in error.

E. D. Means, G. A. Holly, and Bailey & Hammerly, for defendant in error.

McNEILL, J. Two causes of action are consolidated herein, involving the right of inheritance of Jonas Jackson, defendant in error, to the homestead and surplus portions of the allotment of John Freeman, deceased, a full-blood Choctaw Indian. This appeal comes from the district court of Grady county, Okla. On May 10, 1923, the first cause of action, styled, Jonas Jackson v. O. D. Coon, Minnie Coon, and Alcorn Oil Company, Defendants, was filed in said court under No. 7734, and the second cause, being styled, Jonas Jackson v. Joe Davis, Pittsburg Mortgage Investment Company, a Corporation, and Mary Lloyd, was filed in said court under No. 7735. The same were consolidated in said court under No. 7734, and are identical, except that a separate tract of land in each action is sought to be recovered by defendant in error.

The parties will be referred to as they appeared in the trial court. Jonas Jackson, defendant in error, as plaintiff, and O. D. Coon, Minnie Coon, Alcorn Oil Company, Joe Davis, Pittsburg Mortgage Investment Company, and Mary Lloyd, plaintiffs in error, as defendants. The consolidated cause was tried in the district court of said county, on the 15th of January, 1925, before a jury, and the jury returned a verdict for the defendants, and thereafter, the plaintiff, Jonas Jackson, prosecuted his appeal to the Supreme Court of this state, and this court, in an opinion under date of June 1, 1926, reversed the judgment of the trial court, and remanded the action for further proceedings.

The action was an action in ejectment. The plaintiff alleged that he was a citizen by blood of the Choctaw Tribe of Indians, and that he was the owner of and entitled to the premises in question, by inheritance, being the sole heir of said John Freeman, deceased, the allottee, whose allotment was cast at the time of his death, June, 1907, prior to statehood, under chapter 49 of Mansfield's Digest. The defendants contended that said decedent died subsequent to statehood, and that the devolution of said estate was governed by the laws of the state of Oklahoma. This court, in its opinion, stated, in part, as follows:

"We have carefully examined all of the evidence in this case, and we fail to find any competent evidence to support the findings and judgment of the trial court, but, on the contrary, the evidence overwhelmingly and conclusively shows that decedent died prior to statehood."

After discussing the evidence, this court concluded in its opinion as follows:

"* * * And there is no evidence to support the finding that the decedent died subsequent to statehood. The judgment of the trial court is reversed and the cause remanded for further proceedings in keeping with the views herein expressed."

This opinion is reported in 118 Okla. 221, 247 Pac. 27. The mandate was issued on the 21st of June, 1926, and contains the following provisions:

"Now, therefore, you are hereby commanded to cause such reversal to show of record in your court, and to issue such process and to take such other and further action as may be in accord with right and justice in said opinion."

On June 28, 1926, the plaintiff, Jonas Jackson, filed his motion in the district court of Grady county to spread said mandate of record and to enter judgment in favor of the plaintiff and against the defendants.

The defendants, on October 18, 1926, served plaintiff with a notice to take depositions of sundry witnesses before a notary public, on the 23rd of October, 1926, in the town of Pauls Valley, Garvin county, Okla., to be used as evidence in the trial of said cause, at which time the deposition of Sealey James, the mother of John Freeman, the deceased child of said Sealey James and George Freeman, deceased, was taken. She testified that she had been living during the past 18 years at Pauls Valley, Okla.; that her said husband, George Freeman, died three or four weeks before her said son, John Freeman, died, and that John Freeman died in June, 1908.

The testimony of W. J. Thompson, a resident of Pauls Valley for 50 years, was also

taken, relative to a trip that he made to the Choctaw Nation in February, 1908, to get Sealey James and her family to move to Garvin county. He testified that at that time John Freeman was living; that, in October of the same year, after receiving a letter from Sealey James, he returned to the Choctaw Nation, and moved Mrs. James and her family to Pauls Valley; that he entered the expenses of the trip in a small book which shows an expense of $7.20 made in October, 1908; that after Sealey James had moved to Garvin county, he paid for the funeral expenses of John Freeman, deceased.

In the original trial, the defendants offered no evidence on the date of the death of said John Freeman, but relied upon the evidence offered by the plaintiff. The depositions offered on behalf of defendants included the testimony of different witnesses than those who testified at the former trial, and this new evidence is materially and substantially different from that submitted by plaintiff on the former trial, relative to the time of the death of John Freeman.

On the 21st of April, 1928, said defendants filed, in said court, their response to motion of plaintiff for judgment on the mandate, setting forth in said motion the testimony of the aforesaid witnesses relative to the time of the death of John Freeman, The determination of the time of the death of said John Freeman is decisive of the issues in the case. If he died prior to statehood, the devolution of the allotment cast under chapter 49, secs. 2522-2545) Mansfield's Digest of Arkansas. If he died subsequent to statehood, the same is cast under the succession statutes of Oklahoma. The trial court sustained the motion of the plaintiff for a judgment against said defendants upon said mandate.

The opinion of this court reversed the former judgment of the trial court, and remanded the same for further proceedings.

In the case of McIntosh v. Lynch, 93 Okla. 174, 220 Pac. 367, this court said:

"Where a cause is reversed and remanded by the Supreme Court, with directions to the trial court to take such other and further proceedings in the matter as shall accord with said Supreme Court opinion, it stands in the court below the same as if no trial had been had. Pleadings could be amended, supplementary pleadings filed, and new issues formed under proper restrictions."

34 Corpus Juris, 774, states:

"As a general rule, the judgment of an appellate court, reversing a judgment, decree, or order of a trial court does not pur-port to be final or to pass upon the merits of the controversy, and hence does not operate as res judicata, but leaves the parties in the same position as they were before the judgment of the lower court was rendered."

2 Freeman on Judgments (5 Ed.) p. 2416, sec. 1167, states as follows:

"The reversal of a judgment by any competent authority restores the parties litigant to the same condition in which they were prior to its rendition. The judgment reversed becomes mere waste paper; and the parties to it are allowed to proceed in the court below to obtain a 'final determination of their right' in the same manner and to the same extent as if their cause had never been heard or decided by any court."

Under such a mandate as the one in question, a liberal rule is permitted to the parties, in furtherance of justice, to amend their pleadings, file supplemental pleadings, and form new issues under proper restrictions. Had this court directed the trial court to enter a judgment in favor of either party below, a different question would be presented. This court did not see fit to so instruct the trial court, but reversed the judgment of the trial court, which, in effect, vacated the judgment of said trial court. This did not conclude the case, but placed the parties in a position to proceed further in conformity to said former opinion, which is binding upon said parties so far as same is applicable as the law of the case.

The Supreme Court of California, in Re Pusey's Estate, 170 Pac. 847. states as follows:

"In Sharp v. Miller, 66 Cal. 98, 4 Pac. 1065, upon a similar question, the court said:

" 'The reversal of the judgment and order denying the motion for a new trial when the cause was here before, * * * placed the parties in the lower court in the same position as if the case had never been tried, with the exception that the opinion of this court must be followed so far as applicable in the new trial.'

"When an order has been reversed the effect is that:

" 'It no longer had any vitality or force, and the result was to leave the proceeding where it had stood before that order was made.' Estate of Mitchell, 126 Cal. 250, 58 Pac. 549.

"In Ashton v. Heydenfeldt, 124 Cal. 14, 56 Pac. 624, speaking of a decree which had been reversed, the court said:

" 'But that decree having been reversed—vacated—on appeal, the matter stood as though no decree had ever been made'."

"A new trial is a re-examination in the

same court of an issue of fact, after a verdict by a jury, the approval of the report of a referee, or a decision of the court." Section 572, C. O. S. 1921.

If a cause is reversed by the Supreme Court, because the evidence is insufficient to support the findings and judgment of the trial court, and it appears that there is no new competent evidence for submission to the trial court materially and essentially different from that offered on the former appeal, and the facts are practically without dispute, and substantially the same in all vital particulars, and nothing is left open for further examination in the trial court, then the court would be justified, but not otherwise, in rendering a judgment on the mandate. See Syracuse Portrait Co. v. Ft. Smith & W. Ry. Co., 148 Okla. 232, 298 Pac. 268; In re Baird's Estate (Cal.) 223 Pac. 974.

In the case at bar, however, no question was raised as to the diligence of defendants in procuring the evidence sought to be offered, or in reference to their failure to have presented this proof on the first trial. The depositions tended to show proof of a substantial character, relative to the controlling facts in this case, and defendants should have been afforded an opportunity to make proof of the facts necessary to support the allegations of their answer after the judgment of the trial court was reversed and the cause remanded for further proceedings in keeping with the views expressed in the aforesaid opinion of this court.

After a careful review of the record and the briefs, we are of the opinion that the trial court erred in rendering judgment on the mandate in favor of the plaintiff and against the defendants.

The cause is reversed and remanded, with directions to the trial court to grant a new trial and to proceed therein not inconsistent with the former opinion of this court in so far as the same may be applicable, which opinion is binding upon the parties herein as the law of the case.

LESTER, C. J., CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. HEFNER, J., absent.